# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JAMES HARGROVE, | CASE NO. 2:07-cv-240 |
| | JUDGE HOLSCHUH |
| Petitioner, | MAGISTRATE JUDGE ABEL |
| v. | |
| JEFFREY A. WOLFE, Warden, | |
| Respondent. | |

## Report and Recommendation

Petitioner James Hargrove, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. The sole claim remaining for this Court's consideration is petitioner's allegation that he was denied his right to appeal when his attorney failed to follow his instruction to file a notice of appeal. *See Opinion and Order*, March 25, 2008, Doc. No. 9. On May 2, 2008, respondent filed a supplemental Return of Writ. Petitioner has filed a response. Doc. Nos. 12, 13. The Court appointed counsel on petitioner's behalf, and on December 11, 2008, conducted an evidentiary hearing on this claim. Upon consideration of the entire record including evidence submitted at the evidentiary hearing in this matter, for the reasons that follow, the Magistrate Judge concludes that petitioner's claim is without merit and therefore **RECOMMENDS** that this action be **DISMISSED**.

## PROCEDURAL HISTORY

The procedural history of this case is detailed in this Court's *Report and Recommendation*, February 19, 2008, Doc. No. 7, but is repeated here. Petitioner was indicted by the May 2002 term of the Franklin County grand jury on aggravated robbery, in violation of O.R.C. §2911.01 and aggravated murder, in violation of O.R.C. §2903.01, with firearm specifications. *Exhibit 1 to Return of Writ*. On June 28, 2005, while represented by counsel, he pleaded guilty to involuntary manslaughter with a firearm specification. *Exhibit 2 to Return of Writ*. On August 19, 2005, the trial court sentenced petitioner to an aggregate term of eight years incarceration. *Exhibit 3 to Return of Writ*. Petitioner did not file a timely appeal; however, on July 17, 2006, he filed a *pro se* motion for delayed appeal in which he alleged that he had directed his attorney to file an appeal, and that his attorney failed to do so. See *Exhibit 4, 6, and 7 to Return of Writ*. On September 19, 2006, the appellate court denied petitioner's motion for delayed appeal. *Exhibit 7 to Return of Writ*. Petitioner filed a timely appeal, *Exhibits 8 and 9 to Return of Writ*; however, on February 7, 2007, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. *Exhibit 11 to Return of Writ*.

On April 25, 2007, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. On March 25, 2008, all of petitioner's claims, with the exception of his assertion in claim one of denial of the right to appeal due to his attorney's failure to file the appeal after being instructed to do so, were dismissed. Doc.

No. 9. Respondent has filed a supplemental response regarding this claim, contending that the claim is not cognizable for federal habeas corpus relief or without merit. In response to petitioner's allegation, respondent provided a declaration of Attorney Christopher Cooper, petitioner's defense counsel, dated April 30, 2008, in which Attorney Cooper indicates in relevant part:

> 2. I represented Mr. James Hargrove on criminal charges of aggravated robbery and aggravated murder with firearm specifications brought by Franklin County in 2002....
>
> 3. Mr. Hargrove pled guilty to involuntary manslaughter with a firearm specification pursuant to a plea agreement, which I negotiated. The trial court imposed a five-year sentence for involuntary manslaughter with a three year mandatory sentence for the firearm specification.
>
> 4. Mr. Hargrove did not instruct me to pursue an appeal nor did he express any interest in appealing his conviction or sentence. He received a very favorable plea agreement with a single reduced charge and a sentence considerably below the maximum of ten years for involuntary manslaughter, also avoiding the possibility of a fifteen year to life sentence associated with the aggravated murder charge. I did not believe there was any reasonable basis for an appeal or that an appeal would have been in Mr. Hargrove's best interest, considering the favorable nature of the plea agreement and the sentence.
>
> 5. However, if Mr. Hargrove had insisted on an appeal, I would have filed a notice of appeal on his behalf and asked the court to appoint counsel to represent him.
>
> 6. Neither Mr. Hargrove nor his family members contacted me concerning the filing of an appeal at or after sentencing.
>
> 7. I base these statements on my personal recollection of Mr. Hargrove's case and my review of his case file.

*Exhibit A to Supplemental Return of Writ*. Petitioner disputes Cooper's statement that petitioner never asked him to file an appeal. *See Objections*, Doc. No. 13.

**MERITS**

Petitioner James Hargrove asserts that he was denied his right to appeal because his attorney failed to file the appeal after being requested to do so. The Magistrate Judge concludes that Hargrove has failed to prove by a preponderance of the evidence that he asked Cooper to file an appeal.

As discussed by the United States District Court for the Southern District of Ohio, Western Division in *Wolf v. Randle*, 267 F.Supp.2d 743, 748 (S.D. Ohio March 27, 2003),

> The Constitution is violated if a convicted defendant is not given the right to appeal "by reason of his lack of knowledge of his right and the failure of his counsel or the court to advise him of his right to appeal with the aid of counsel." *Jacobs v. Mohr*, 265 F.3d 407, 419 (6th Cir.2001) (citing *Goodwin v. Cardwell*, 432 F.2d 521, 522-23 (6th Cir.1970)). The defendant has ultimate authority in making certain fundamental determinations pertaining to his case, including the right to appeal. *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). The authority to pursue an appeal, even one following a guilty plea, is the defendant's alone. *Marrow v. United States*, 772 F.2d 525, 530 (9th Cir.1985). The decision to appeal is not the determination of defendant's lawyer. *Id.* In order to make such a decision, the defendant must have knowledge about the appeals options available to him. *United States ex rel. Smith v. McMann*, 417 F.2d 648, 654 (2d Cir.1969), *cert. denied*, 397 U.S. 925, 90 S.Ct. 929, 25 L.Ed.2d 105 (1970) (construing *Douglas v. California* as imposing on a state "a duty to warn every person convicted of a crime of his right to

4

> appeal...the right to appeal at the expense of the state is a mere illusion if the convicted indigent defendant does not know such a right exists."); *State v. Sims,* 27 Ohio St.2d 79, 272 N.E.2d 87, 91 (1971) (finding that "in the absence of evidence in the record upon which it could be determined that an indigent convicted defendant knowingly and intelligently waived his right of direct appeal...it was error for the Court of Appeals to dismiss the motion for leave to appeal without making such a factual determination.")
>
> In order to be properly informed, a defendant must be told of his right to appeal, the procedures and time limits involved in proceeding with that appeal, and the right to have the assistance of appointed counsel for that appeal. *White,* 180 F.3d at 652 (5th Cir.1999), *Norris v. Wainwright,* 588 F.2d 130, 135 (5th Cir.), *cert. denied,* 444 U.S. 846, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979) The petitioner bears the burden of showing by a preponderance of the evidence that he was not advised of his rights. *Faught v. Cowan,* 507 F.2d 273, 275 (6th Cir.1974), *cert. denied,* 421 U.S. 919, 95 S.Ct. 1583, 43 L.Ed.2d 786 (1975). Further, a defendant cannot base a claim on the court's failure to inform him of his appellate rights if he has personal knowledge of these rights. *Peguero,* 526 U.S. at 29-30, 119 S.Ct. 961(citing *Soto v. U.S.,* 185 F.3d 48, 54 (2d Cir.1999)).

*Id*. However, petitioner Hargrove alleges that he requested his attorney, Christopher Cooper, to file the appeal, and he failed to do so. Therefore, the record is not in dispute that, despite being advised by the trial court at the time of his guilty plea that he was waiving his right to appeal by entry of the guilty plea, *Transcript, Guilty Plea*, at 10, *Exhibit 13 to Return of Writ*, petitioner knew about his right to appeal and the time limit for filing an appeal. Petitioner testified at the evidentiary:

> I knew I could appeal my case.

*Transcript, Evidentiary Hearing*, at 15. Additionally, Hargrove signed an *Entry of Guilty*

5

*Plea* acknowledging that he understood his right to appeal within thirty days. *See Exhibit 2 to Return of Writ; Transcript, Evidentiary Hearing*, at 21; 42. Cooper reviewed all provisions of the guilty plea with petitioner and explained to petitioner his right to appeal. *Transcript, Evidentiary Hearing*, at 42-43. Cooper advised Hargrove that an appeal must be filed within thirty days and that, ordinarily, a new attorney would be appointed on appeal:

> [O]ne, I don't do appellate work. And two, I always tell my clients that you should always have a different attorney because you may want to say that I did something wrong or I was not effective as your counsel.

*Id.*, at 43. Based on the testimony and other evidence offered at the evidentiary hearing, I conclude that petitioner Hargrove knew he had a right to appeal his sentence but that he has failed to prove by a preponderance of the evidence that he instructed Cooper to file a notice of appeal.

Hargrove left school during the 10th grade. He can read and write. Based on his testimony and that of his attorney, Cooper, I conclude that Hargrove had sufficient education to understand his right of appeal, that Cooper explained to Hargrove his right to appeal the sentence, and that Hargrove understood that right.

There was substantial evidence supporting the criminal charges against Hargrove. Cooper monitored the trial of a codefendant (Carlos Mays). Another codefendant (Thomasina Jordan) testified against Mays. She testified that both Mays and Hargrove had guns. *Transcript, Evidentiary Hearing*, at 34. Mays was convicted of

6

aggravated murder with death penalty specifications. *Transcript, Evidentiary Hearing*, at 49-50. Hargrove was exposed to potential maximum sentences of 35 years to life imprisonment for aggravated murder plus possibly another ten on the aggravated robbery in addition to a three year consecutive term on the firearm specification (not including his sentence on the unrelated drug case). *Transcript, Evidentiary Hearing*, at 50-51. He fully understood that if he pleaded guilty to the gun specification, he would have to serve a term of 3 years in prison after serving the term for involuntary manslaughter. *Transcript, Evidentiary Hearing*, at 41-42.

Petitioner further understood he faced a maximum of thirteen years incarceration as the result of his guilty plea, *i.e.*, ten years on voluntary manslaughter and a three year consecutive term on the firearm specification. *Transcript, Evidentiary Hearing,* at 10. However, no one had promised him what sentence the trial court would impose.

> I didn't know what I was getting.
>
> ***
>
> It was up to the judge.

*Id.*, at 10-11. The trial court sentenced petitioner to an aggregate term of eight years, including a concurrent 18 months on an unrelated drug trafficking case. *Id.*, at 12. Nonetheless, petitioner contends that he wanted to file an appeal because, despite his admission of guilt, he neither possessed a firearm nor shot anyone. *Id.*, at 13.

> Q. And did you express your unhappiness with the
> pleading to a firearm to Mr. Cooper?

7

> A. Yes, sir.
>
> Q. What was his response?
>
> A. He told me that he got me, meaning, yes, he was going to try to fight it for me.

*Id.*

> I had asked him could he appeal the gun specification for me....
>
> Because I didn't have no gun, and so I didn't feel like I was supposed to have a firearm specification.
>
> ***
>
> He told me he got me.
>
> Q. He said, "He got me"?
>
> A. He said, "I got you."
>
> ***
>
> [L]ike I am going to look into it.
>
> Q. That's what you took it to mean?
>
> A. Yes, sir.

*Id.*, at 14.

> Q. Did he come out and expressly say that I am going to appeal your case for you?
>
> A. No, sir.
>
> ***
>
> He told me that he got me, he would look into it.

*Id*. Petitioner did not thereafter attempt to write or call counsel regarding the appeal. He learned in May or June when his son's mother called the Clerk of Courts that an appeal had not been filed. *Id*., at 16, 18.

Neither petitioner nor his attorney objected to the prosecutor's recitation of facts indicating that petitioner carried a "Tech 9" during the homicide. As discussed, petitioner admitted guilt to the charge. *Id*., at 23. He understood the firearm specification carried a mandatory three year consecutive term. *Id*., at 23-24. Further, Attorney Cooper testified that his practice does not include appellate work and he "absolutely" communicates, as a part of his standard practice, to clients

> that we do not do appellate work because if we have represented them at trial, they may want to allege that we were ineffective or something, so it would be better for them to have other counsel.

*Id*., at 32. Counsel advised petitioner that if he proceeded to trial, testimony would indicate that he possessed a firearm. *Id*., at 42.

> I was never advised by Mr. Hargrove that he wanted to appeal.
>
> Q. Did he ever instruct you to file a notice of appeal on his behalf?
>
> A. No.

*Id*., at 48-49. Attorney Cooper did not have reason to believe petitioner would want to file an appeal.

> I assessed the case as very difficult. He had three years jail time credit, that if we could get it down to a reasonable

9

> situation, which 8 years I thought was a pretty good offer.
> He would have had three years credit and would only have
> to serve five years.... [T]he other case being concurrent, and
> for what his risk factors were, I thought that was a very good
> resolution.
>
> ***
>
> ... [H]e was getting comlete credit for his jail time credit,
> where most of the time was served on electronic
> monitoring.... I thought [it] was a very good opportunity for
> him....

*Id.*, at 50-51.

Before entering the plea, Hardgrove discussed with Cooper the strengths and weaknesses of the case. The plea agreement he was offered was consistent with that made to the codefendant, Thomasina Jordan, who had to testify against Mays. Hargrove did not have to agree to testify against a codefendant. *Transcript, Evidentiary Hearing*, at 39. In Cooper's estimation, the plea agreement offered was favorable to Hargrove. *Transcript, Evidentiary Hearing*, at 50-51. He did not believe that it would be in the interest of a defendant in Hargrove's situation to appeal that favorable sentence. *Transcript, Evidentiary Hearing*, at 49-50.

Moreover, the state appellate court denied petitioner's motion for delayed appeal in part because petitioner failed to explain his delay in filing the appeal after he learned that no appeal had been filed:

> On June 28, 2005, Hargrove entered a guilty plea to one
> count of involuntary manslaughter in violation of R.C.
> 2903.04 with a firearm specification. In a judgment entry
> filed August 22, 2005, the trial court accepted Hargrove's

10

> plea, found him guilty, and sentenced him accordingly. Hargrove failed to timely appeal from that judgment. He admits that he knew of his right to appeal that judgment. He claims, however, that he instructed his attorney to file an appeal and then did not hear anything from his attorney and did not receive a new attorney for an appeal. He claims that months later he discovered that his attorney did not file an appeal and only later learned that he could file a motion for delayed appeal. Other than his own self-serving statement, Hargrove presents no support for his allegation that he instructed his attorney to file an appeal.
>
> ... Hargrove waited 11 months after his conviction to file this motion. He does not explain when he learned that his attorney did not file an appeal.... Hargrove could have discovered that his attorney did not file an appeal on his behalf much earlier. He also fails to explain when he learned of the availability of the motion for a delayed appeal. Importantly, Hargrove also fails to explain the steps he took once he learned of his attorney's failure to file an appeal or his ability to file the instant motion. Hargrove's 11-month delay in filing his motion for leave to appeal, without justifiable explanation, is unreasonable....
>
> For these reasons, Hargrove's motion for leave to appeal... is denied.

*Exhibit 7 to Return of Writ.*

Given the factual background set out above, my assessment of the credibility of the witnesses, Hargrove's delay in filing a motion for leave to file a delayed appeal, and the absence of evidence corroborating Hargrove's testimony that he asked Cooper to file a notice of appeal, I conclude that Hargrove has failed to prove by a preponderance of the evidence that he asked Cooper to file a notice of appeal.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this

action be **DISMISSED**.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

s/Mark R. Abel
United States Magistrate Judge